# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERY R. WERNER<br><br>　　　　　*Plaintiff*,<br>　　　v.<br><br>VIRALNOVA, LLC,<br><br>and<br><br>SCOTT DELONG<br><br>and<br><br>SARA HEDDLESTON<br><br>and<br><br>DOES 1-10, inclusive,<br><br>　　　　　*Defendants*. | CIVIL ACTION NO.<br>15-CV-____ |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Jeffery R. Werner ("Mr. Werner") complains against Defendants ViralNova, LLC ("ViralNova"), Scott DeLong, Sara Heddleston, and Does 1-10, seeking monetary relief, alleging as follows:

1.　　The address of each named party is as follows: JEFFERY R. WERNER, 4910 1/4 McConnell Ave., Los Angeles, CA 90066; VIRALNOVA, LLC, 35 West 36th Street, Suite 9W New York, NY 10018;  SCOTT DELONG, 35 West 36th Street, Suite 9W, New York, NY 10018; and SARA HEDDLESTON, 363 W. 30th St. Apt 4E, New York, NY 1000.

2.　　This is an action for copyright infringement of a professional photographer's work arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.,* and for removing

copyright management information from the work in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over the copyright infringement claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights) and 28 U.S.C. § 1338(b) (unfair competition related to copyright).

4. This Court has general personal jurisdiction over the Defendants because they do continuous and systematic business in Manhattan Borough, New York City, which is the location of ViralNova's principal place of business.

5. Venue is proper pursuant to 28 U.S.C. § 1400(a) (venue in copyright actions) as Defendants may be found in this District where it is subject to the Court's jurisdiction.   In addition, venue is proper under 28 U.S.C. 1391(1) (defendant's residence) and 28 U.S.C. 1391 (2) (where actions occurred).

## THE PARTIES

6. Plaintiff, Jeffery Werner, is an individual who resides in Los Angeles, California. He is the owner of the copyrights to the photographs that are the subject of this action.

7. Defendant, ViralNova, LLC ("ViralNova"), is a limited liability company organized on March 3, 2014 under the laws of the state of Delaware, where the Secretary of State of the state of Delaware reports it remained a Delaware entity in good standing as of June 23, 2015.  Its principal place of business is in Manhattan Borough, New York City, New York, where it maintains its business offices.

8. Defendant, Scott DeLong, is a natural person who is employed and, on information and belief, resides in Manhattan Borough, New York City, New York. On information and belief, he founded ViralNova in Ohio 2013, moved its operations to New York City in 2014, and is now employed as ViralNova's Chief Strategy Officer after selling controlling interest in the business to Sean Bechner, the current CEO. On information and belief, Mr. DeLong managed and owned ViralNova at all times material to this Complaint.

9. Defendant, Sara Heddleston, is a natural person who resides in Manhattan Borough, New York City, New York. She was at all material times and, on information and belief, is now the Managing Editor of ViralNova. On information and belief, Ms. Heddleston was the ViralNova employee who perpetrated the piracy of Mr. Werner's property for her own benefit and at the behest of ViralNova, Mr. DeLong, and Does 1 through 10.

10. Defendants DOES 1 through 10, inclusive, are other parties who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein including, but not limited to, employees, agents, and advisors of ViralNova, its investors, internet-related service vendors, and advertisers who knowingly abetted and profited from the company's illegal practices. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Mr. Werner, who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when that information has been ascertained in discovery.

11. Each of the parties herein named as DOES 1-10 is responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought. Defendants are jointly and severally liable for all acts of infringement described herein.

## FACTS

### Mr. Werner Is a Professional Photographer

12. Mr. Werner has over 30 years of experience as a professional photographer. His work has appeared in magazines world-wide as covers, features, and editorial coverage in publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly*, and *Page Six Sunday Magazine* (*NY Post*) and many others. He has had over 100 double-page spreads in the *National Enquirer*. His photographs of amazing stunts, performed with motorcycles, airplanes, trains, and other vehicles, were featured on such television shows as: *That's Incredible!*, *The World's Greatest Stunts*, *Stuntmasters, Guinness World Record Spectaculars, Ripley's Believe It Or Not*, and *I Dare You*. Werner's portfolio of images has also been featured in a 16-page spread in both French and Italian *Photo* magazines, with pickups appearing in *Panorama* magazine (Netherlands), *Stern* (Germany), *Photo District News* (US), *Mad* magazine (France), and the 25th anniversary issue of *New Look* magazine. Many of his iconic photographs were also chosen to be published in the TALK/MIRIMAX coffee table book "*The National Enquirer, Thirty Years of Unforgettable Images.*" Jeffery Werner is a member of the Los Angeles Press Club and the American Society of Media Photographers, and is the CEO of an editorial photo syndication agency, Incredible Features, Inc.

13. Mr. Werner has developed a specialty in photographing stunts and stuntmen and women. His attention to detail, even while filming dangerous stunts with his signature 15-camera remote photography set-up, has exposed him to the danger involved in getting very close to the action. Capturing these explosive photo sequences landed him the exclusive honor of being the only still photographer inducted into The Stuntworld Hall of Fame. Featured on a

segment of "*The Adventures*" TV show, he was referred to as the "da Vinci of daredevil photography" (https:// helldriversmovie.wordpress.com/2008/11/10/incredible-stunts-book/). *French Photo*, called him the "incredible but true photographer" and Caesar's Palace chose him as the official photographer for Robbie Knievel's jump across the fountains that was covered by numerous magazines and TV outlets around the world, including *Life* and *Sports Illustrated*. Werner's body of stunt photography is displayed in 2009 coffee table book, *Incredible Stunts: The Chaos, Crashes and Courage of the World's Wildest Stuntmen and Daredevils* (ISBN-13: 978-0-9796349-9-4).

14.     Mr. Werner is also well-known for his work with exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles.  Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the Annenberg Space for Photography in Los Angeles in 2009.  Vince Streano, photographer and President Emeritus of the American Society of Media Photographers, has said that "Jeff is the Diane Arbus of the 21st century" because he crosses social lines to celebrate the odd - rather than belittle his subjects.

15.      The uniqueness of Mr. Werner's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Incredible Features, Inc. Mr. Werner has always maintained the publishing rights to his works, knowing they would provide the revenue to produce his next story.  Mr. Werner relies on income generated from licensing his photograph for his living.  Plaintiff employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Plaintiff's portfolio.

16.     Unfortunately, a multitude of unauthorized works by Mr. Werner are now on the internet as a result of intellectual property theft.  The magnitude of this theft is a baleful compliment to his talents: web pirates, who pay nothing for stolen content, can select the best.

17.     Mr. Werner's syndication company, Incredible Features, Inc., which licenses his work, has now been forced to add additional staff to discover piracy and to help collect the revenues due to him from the tide of copyright infringements. The policing of his intellectual properties became a cumbersome and expensive task which adds to the cost of every image produced. As in the past, despite the constant struggle against internet piracy, Werner still relies on these revenues to produce his next incredible story and to pay his staff and vendors.

### Defendants Are, On Information and Belief, Systematically Engaged In the Business of Profiting From Internet Piracy

18.     VIRALNOVA.COM was at all material times, on information and belief, a "clickbait" website that primarily published short articles of misappropriated and unoriginal content.  A published interview with Scott DeLong, who was at all relevant times the principal of ViralNova, explained that ViralNova's business depended on pulling visitors by external links, such as from Facebook.  (http://www.businessinsider.com/why-viralnova-might-sell-2014-1) The *Wall Street Journal* reported on March 10, 2015, that ViralNova's traffic is "almost entirely due to Facebook." A ranking site reports that, as of mid-June, 2015, 16.6 % of VIRALNOVA.COM's unique visits came directly from Facebook. ( http://www.alexa.com/ siteinfo /viralnova. com)

19.     ViralNova derived its revenues from cheap "remnant ads," as from Google AdSense, usually displaying two per viewed page.  Advertisers pay for unique visitor impressions ("clicks") drawn to the bait page from social media.  In short, links to the ViralNova

site were posted on Facebook and Twitter, those posts were liked and retweeted, and this drove traffic and ad revenue to the VIRALNOVA.COM site.

20. Based upon its exploitation of the work of Mr. Werner and, on information and belief, other similarly-situated victims of internet content piracy, ViralNova allegedly grew rapidly into one of the world's most successful websites that claims to pull in 100 million monthly unique visitors.  On March 10, 2015, the *New York Business Journal* reported that ViralNova claimed to have revenue exceeding $10 million in 2014 and expected to make $20 million in 2015.  As of June, 2015, it ranked as the 456th most visited website in the United States and the 1,072nd most visited in the world.  (http://www.alexa. com/siteinfo/viralnova.com)  On information and belief, that success is an artifact of ViralNova dealing substantially in pirated content.

21. Defendant Sara Heddleston, who was Managing Editor of ViralNova at all material times, and is on information and belief was the individual who perpetrated the unlawful copying of Mr. Werner's work, has ascribed ViralNova's success in standing out from its competition to "putting out the best content possible."  Ms. Heddleston has been quoted admitting that:

> We start the day off by finding content online and reaching out to people or having discussions, brainstorming about what we can write about….
> We have a huge focus on finding the best content out there to put on the site. That's our mission – to give our readers the greatest content, not just anything out there. Our editors, including myself, use Spike at the beginning of the day to see what's been trending in the past 24 hours and the past 12 hours. I do that at the beginning of the day, but I tend to hop on throughout the day too, to see what's happening online. That's how we curate a lot of our content.

(http://blog.newswhip.com/index.php/2014/11/viral-nova-interview)  In this context, "curate" is, on information and belief, a euphemism for willful theft of intellectual property for commercial exploitation.

22. Defendants infringed Mr. Werner's copyrights for purposes of commercial advantage or private financial gain. They reproduced and distributed, by electronic means, Mr. Werner's copyrighted works prepared for commercial distribution, by making the works available on a computer network accessible to members of the public knowing that the distributed work was intended for commercial distribution.

### ViralNova Infringed Mr. Werner's Copyright
### In "Giant George (I) Protected Works"

23. On or about November, 2009, Mr. Werner conducted a photo shoot of Giant George, a seven-foot long Great Dane who at the time was being discussed as a contender for the title of "World's Tallest Dog," bestowed by the Guinness Book of World Records. Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Giant George's owner, and traveled to Tucson, Arizona, for the photo shoot all at Incredible Features' expense. The photo shoot resulted in a collection of photographs featuring Giant George (the "Giant George (I) Protected Works").

24. Interest in the Giant George Photographs exploded, resulting in licensing opportunities for Mr. Werner. Plaintiff licensed the Giant George Photographs to such media outlets as T*he Daily Mail*, *The Oprah Show*, *Maxim Magazine*, *National Geographic Reader*, *In Touch Weekly*, the *National Examiner, QUO Magazine* in Spain, and *30 Millions d'Amis*, Europe's premier animal magazine. In early February 2010, Giant George was declared by the Guinness Book of World Records as the world's tallest dog. That designation resulted in renewed interest in Mr. Werner's Giant George I Protected Work, and created further licensing opportunities for him. When Giant George died, three images from the Giant George Protected Works were republished on October 23, 2013, in a feature appearing in a licensee of Incredible Features, the *Daily Mail* in England. (http://www.dailymail.co.uk/news/article-2474751/Giant-

George-worlds-tallest-dog-EVER-stood-7ft-tall-hind-legs-passes-away-home.html)

25. The Giant George (I) Protected Works were registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-005-177, effective as of November 11, 2009. A copy of the registration certificate is attached hereto as Exhibit "A."

26. On October 24, 2013, ViralNova posted a story allegedly authored "by" Sara Heddleston titled, "I Love George, the 7 Foot Tall Great Dane. Unfortunately, That's Why I'm in Tears Now" (the "Giant George (I) Infringing Work"). The images were, on information and belief, copied from the Daily Mail post dated October 23, 2013. Three of the eight images that ViralNova republished were authored by Mr. Werner. *See* second, fifth and seventh images, George (I) Infringing Work at Exhibit "B." The images in the Giant George (I) Infringing Work that ViralNova copied without regard for the Author's intellectual property rights contained watermarked copyright notices stating "© Incredible Features/Barcroft M."

27. Ms. Heddleston did not have a license from Mr. Werner or Incredible Features or from any agent of Mr. Werner, nor did she have any permission to copy Mr. Werner's Protected Work. At all relevant times, Ms. Heddleston was acting within the scope of and pursuant to her duties as an editor of ViralNova. Viral Nova reproduced, distributed, and publicly displayed Mr. Werner's Work without authorization in the Southern District of New York.

28. The unauthorized copies of the Giant George (I) Infringing Works were hosted at ViralNova's own servers at http://www. viralnova.com /george-the-dog/.

**ViralNova Infringed Mr. Werner's Copyright In
"Giant George (II) Protected Works"**

29. On April 10, 2014, ViralNova posted a story allegedly authored "by" Sara Heddleston titled, "These Animals are the Largest of their Kind…And I Won't Sleep for a Week After Seeing Them" (the "Giant George (II) Infringing Work"). The story consisted of 22

photographs of outsized animals including, in photo number 13, one of the images of Giant George that ViralNova had previously published as part of the Giant George (I) Infringing Work. *See* Giant George (II) Infringing Work at Exhibit "C."

30. In publishing the Giant George (II) Infringing Work, ViralNova either deleted the copyright management information ("CMI") watermark that it had included in its Giant George (I) Infringing Work, or it republished the Protected Work knowing that the CMI had been removed.

31. Ms. Heddleston did not have a license from Mr. Werner or Incredible Features or from any agent of Mr. Werner, nor did she have any permission to copy Mr. Werner's Protected Work. At all relevant times, Ms. Heddleston was acting within the scope of and pursuant to her duties as an editor of ViralNova. Her infringing actions were perpetrated at ViralNova's Manhattan offices in the Southern District of New York. Viral Nova reproduced, distributed, and publicly displayed Mr. Werner's Work without authorization in the Southern District of New York.

32. The unauthorized copies of the Giant George (II) Infringing Works were hosted at ViralNova's own servers at http://www. viralnova.com/george-the-dog/.

### ViralNova Infringed Mr. Werner's Copyright In "Inri Christo Protected Works"

33. On or about November, 2013, Mr. Werner travelled at his own expense to a remote location 1.5 hours outside of Brasilia, Brazil, to conduct a photo shoot of a preacher claiming to be Jesus who attracted a large coterie of female devotees. Once in Brazil, Mr. Werner spent considerable time seeking access to the cult-like religious group, which he eventually received due to his reputation for treating unconventional subjects with respect. Once admitted, Mr. Werner did a photo shoot of the group and its spiritual leader (the "Inri Christo

Protected Works").

34. Legitimate publications were interested in the Inri Christo Protected Works, resulting in licensing opportunities for Mr. Werner. Plaintiff licensed the Inri Christo Photographs to such media outlets as the Daily Mail Online, Telegraph Group, Daily Mirror Online, and Galileo Big Picture (Germany).

35. The Inri Christo Protected Works were registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-909-977, effective as of January 7, 2014. A copy of the registration certificate is attached hereto as Exhibit "D."

36. On January 6, 2014, ViralNova posted a story allegedly authored "by" Sara Heddleston titled, "You Haven't Seen A Religious Nutcase Til You See This Scooter-Riding Jesus" (the "Inri Christo Infringing Works"). *See* Inri Christo Infringing Works at Exhibit "E."

37. The story consisted of one black and white historical file photo from 1979 and twelve images from the Inri Christo Protected Works, with captions, which appear to have been stolen from the Daily Mail, a legitimate licensee which published the images on January 7, 2014 (London time). By, on information and belief, stealing from a legitimate licensee in a different time zone, Viral Nova was able to "scoop" paid licensees by publishing Mr. Werner's Inri Christo Protected Works throughout the world for free as Mr. Werner and his agents had just begun to market them for fees. The images in the Inri Christo Infringing Work that ViralNova copied without regard for the Author's intellectual property rights contained watermarked copyright notices stating "© Incredible Features/Barcroft M."

38. Ms. Heddleston did not have a license from Mr. Werner or Incredible Features or from any agent of Mr. Werner, nor did she have any permission to copy Mr. Werner's Inri Christo Protected Work. At all relevant times, Ms. Heddleston was acting within the scope of

and pursuant to her duties as an editor of ViralNova. Her infringing actions were perpetrated at ViralNova's Manhattan offices in the Southern District of New York. Viral Nova reproduced, distributed, and publicly displayed Mr. Werner's Work without authorization in the Southern District of New York.

39. The unauthorized copies of the Inri Christo Infringing Works were hosted at ViralNova's own servers at http:// www/viralnova.com/scooter-jesus/.

**ViralNova Infringed Mr. Werner's Copyright In
"Goatee Photos Protected Works" and "Goatee Video Protected Work**

40. On or about January, 2012, Mr. Werner created two separate works depicting Goatee, a surfing goat. One is the result of a photo shoot (the "Goatee Photos Protected Works") and the other is a video motion picture (the "Goatee Video Protected Work").

41. Legitimate publications were interested in the Goatee Protected Works, resulting in licensing opportunities for Mr. Werner. Plaintiff licensed the Giant George Photographs to such media outlets as *In Touch Weekly, New York Post, The Sun, Die Aktuelle* (Germany), *This Week* (U.K.), *Expressen Bild* (Sweden), *The Indepedenct Newspaper* (U.K.), *Mehr Spag* (Germany), and *The Press Association* (U.K.).

42. The Goatee Photos Protected Works were registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-803-445 effective as of February 1, 2012. A copy of the registration certificate is attached hereto as Exhibit "F."

43. The Goatee Video Protected Work was registered by Mr. Werner with the U.S. Copyright Office, Registration No. PA 1-773-623 effective as of February 1, 2012. A copy of the registration certificate is attached hereto as Exhibit "G."

44. On October 28, 2014, ViralNova posted a feature with no author identified under the title, "If You're Afraid of Learning to Surf, Get Inspired by These Animals" (the "Goatee Infringing Work"). The story consisted of sixteen captioned images of surfing animals. One, captioned "This goat knows that surf's up," is copied from the Goatee Photos Protected Works. Another work by Mr. Werner, captioned, "These two are having a totally tubular time," is copied from the Goatee Photos Protected Works. *See* Goatee Infringing Work at Exhibit "H." To be clear, the Goatee Infringing Work infringed two different, separately-registered works owned by Mr. Werner.

45. No employee or agent of ViralNova, including Does 1-10 or any of them, had a license from Mr. Werner or Incredible Features or from any agent of Mr. Werner, nor did it have any permission, to copy Mr. Werner's Goatee Photos Protected Works or his Goatee Video Protected Work.

46. On information and belief, at all relevant times, Does 1-10 or any of them, who copied or contributed to or facilitated copying the Protected Works were acting within the scope of and pursuant to their duties as employees, agents, investors, or vendors of ViralNova. The infringing actions were perpetrated at ViralNova's Manhattan offices in the Southern District of New York. Viral Nova reproduced, distributed, and publicly displayed Mr. Werner's Work without authorization in the Southern District of New York.

47. The unauthorized copies of the Goatee Photos Protected Works and the Goatee Video Protected Work were hosted at ViralNova's own servers at http://www.viralnova.com/surfing-animals-hang-10/.

**Other Allegations**

48. ViralNova's illegal copying of Mr. Werner's images has resulted in a diminution in the value of the four Protected Works. Plaintiff's ability to license the material to paying syndication customers was diminished when the same material was pirated and published by ViralNova without payment and, in the case of the Giant George II Infringing Work, stripped of its copyright notice.

49. On discovering ViralNova's infringement, Incredible Feature's agent, Brian Wolff of International Intellectual Property, Inc. ("IIPI"), wrote to Sean Beckner at ViralNova's New York office enclosing a copy of Mr. Werner's copyright Certificates of Registration and demanding that ViralNova remove the Infringing Works from its web site and account for their use. Brian Wolff of IIPI conveyed an offer to negotiate retroactive licenses for unauthorized uses once ViralNova fully accounted for its uses of Mr. Werner's Protected Works. *See* letter dated March 6, 2015, from Brian Wolff to Sean Beckner at Exhibit "I."

50. In response, defendant Scott DeLong emailed Mr. Wolff on March 12, 2015stating, "I received the Cease and Desist letter at our New York office today regarding ViralNova.com's image usage."

51. On or about mid-March, 2015, ViralNova removed the Infringing Works from its website. It never accounted for its uses of the Protected Works.

52. ViralNova intentionally infringed numerous works owned by Mr. Werner that were contained in four separate copyright registrations in disregard of clear copyright notices. In the case of the Giant George II Infringing Work, ViralNova altered visible CMI or, in the alternative, it republished copyrighted work knowing that CMI present in its first pirated publication of the work had been removed.

**COUNT I**
*Mr. Werner v. All Defendants*
(**Copyright Infringement,** 17 U.S.C. § 501)

53.     Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 52.

54.     Mr. Werner is the author and copyright owner of the Protected Works.

55.     Defendants have reproduced, displayed, distributed or otherwise copied Protected Works without Mr. Werner's license or authorization.

56.     The actions and conduct of Defendants as described above infringe upon the exclusive rights granted to photographers under 17 U.S.C.A. 106 to display, reproduce, and distribute their works, and to create derivative works based thereon.  Such actions and conduct constitute copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

57.     Mr. Werner has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works pursuant to 17 U.S.C. § 408.

58.     Having timely registered his copyright, Mr. Werner is entitled to elect statutory damages under 17 USC § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement if the infringements are deemed not willful.

59.     Defendants' infringements were willful.  On information and belief, ViralNova substantially operated, at all relevant times, as a pirate website.  Its business model was, on information and belief, predicated on the theft and commercial exploitation of intellectual property.  The defendants' infringements were committed for purposes of commercial advantage or private financial gain, and they were accomplished by the distribution of Mr. Werner's Protected Works which defendants made available on a website accessible to members of the

public when they knew, or should have known, that the Protected Works were prepared by Mr. Werner for commercial distribution.

60. Because Defendants' copyright infringement was willful, and because Mr. Werner registered his copyright, he is entitled to enhanced statutory damages pursuant to 17 U.S. Code § 504(c)(2) for each of the infringed works.

61. In the alternative, Mr. Werner is entitled to elect recovery of his actual damages and Defendants' profits attributable to the infringements of each of the many images that ViralNova copied, pursuant to 17 U.S.C. 504(b). He is thus entitled to an accounting of Defendants' profits.

62. Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

63. Prior registration also entitles Mr. Werner to seek an award of his attorney's fees pursuant to 17 USC § 412 and § 505.

## COUNT II
### *Mr. Werner v. All Defendants*
### (Violation of Digital Millennium Copyright Act)

64. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 63.

65. On information and belief, Defendants intentionally removed or altered copyright management information from the Giant George II Protected Work in violation of 17 U.S.C. § 1202(b)(1).

66. In the alternative, on information and belief, Defendants distributed, imported for distribution, and published works or copies of works knowing that copyright management

information has been removed or altered without authority of the copyright owner or the law, in violation of 17 U.S.C. § 1202(b)(3).

67.  Defendants had reasonable grounds to know that their misconduct would induce, enable, facilitate or conceal infringement. By removing CMI, Defendants also encouraged others to replicate ViralNova's infringement.  This is particularly damaging as ViralNova's business model depends on baiting visitors from external links, chiefly Facebook, who may then repost the Protected Work as if ViralNova had placed Mr. Werner's Protected Works, prepared for commercial distribution, in the public domain.

68.  On information and belief, Defendants' actions were knowing, willful, reckless, and so warrant enhanced damages and penalties.

69.  Mr. Werner is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4) and (5).

## COUNT III
*Mr. Werner v. Mr. DeLong, Ms. Heddleston, and Does 1-10*
(Vicarious and/or Contributory Copyright Infringement)

70.  Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 69.

71.  Plaintiff is the author and owner of the copyrights to the Protected Works.  All of the images at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

72.  On information and belief, Mr. DeLong, Ms. Heddleston, and Does 1-10 knowingly induced, participated in, aided and abetted in, and profited from the illegal reproduction and distribution of the Protected Works.

73. On information and belief, Mr. DeLong, Ms. Heddleston, and Does 1-10, if they were not direct infringers, knew or should have known of the infringing activity which they facilitated.

74. On information and belief, Mr. DeLong, Ms. Heddleston, and Does 1-10 provided the site and/or technical or financial means for such infringing activity to occur through VIRALNOVA.COM, and they encouraged ViralNova's employees and representatives to systematically post to VIRALNOVA.COM pirated content that they knew, or should have known, was the property of others.

75. Defendants, and each of them, have obtained direct and indirect profits or other commercial benefits that they would not otherwise have realized but for the infringement of Mr. Werner's rights in the Protected Works.

76. As a direct and proximate result of said acts of vicarious and contributory infringement, Mr. Werner has suffered substantial damages in an amount to be proven at trial, as well as additional and special damages in an amount to be proven at trial.

77. Mr. Werner is entitled to actual damages and disgorgement of direct and indirect profits realized by Defendants, and each of them, in an amount to be proven at trial or, at his election, statutory damages, whichever is greater.

78. Because Defendants' indirect or vicarious copyright infringement was willful, Mr. Werner is entitled to enhanced statutory damages pursuant to 17 U.S.C. §504(c)(2).

79. Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

80. Mr. Werner is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**RELIEF**

WHEREFORE, Mr. Werner requests judgment against the Defendants for:

1. A finding that Defendants infringed Mr. Werner's copyright interests in the Protected Works by copying and publishing it for purposes of commercial advantage or private financial gain without any license or consent;

2. A joint and several award of Mr. Werner's actual damages and disgorgement of all of ViralNova's profits attributable to the infringement above the amount of actual damages, as provided by 17 U.S.C. §504, in an amount to be proven at trial or, in the alternative, at Mr. Werner's election, statutory damages for willful infringement pursuant to 17 U.S.C. §504(c)(2).

3. An order, pursuant to 17 U.S.C. 502(a), enjoining the Defendants from any infringing use of any of Mr. Werner's works;

4. An order, pursuant to 17 U.S.C. §§ 502 and 503, impounding or enjoining Defendants to turn over to Mr. Werner all copies of the Protected Work claimed to have been made or used in violation of the exclusive right of the copyright owner; all plates, tapes, film negatives, or other articles by means of which such copies may be reproduced; and records documenting the manufacture, sale, or receipt of things involved in any such violation.

5. A joint and several award of Mr. Werner's attorney's fees and costs pursuant to 17 U.S.C. §505.

6. A finding that Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. 1202, by knowingly removing Plaintiff's CMI attached to the Protected Work;

7. A joint and several award of the actual damages, pursuant to 17 U.S.C. §1203, suffered by the Mr. Werner as a result of the violation of the Digital Millennium Copyright Act, and profits of Defendants that are attributable to the violation and are not taken into account in

computing the actual damages or, in the alternative, at Mr. Werner's election, statutory damages pursuant to 17 U.S.C. §1203, whichever is larger;

      8.      A joint and several award of Mr. Werner's attorney's fees and costs pursuant to 17 U.S.C. §1203;

      9.      Pretrial interest as permitted by law;

      10.      A constructive trust be entered over any revenues or other proceeds realized by Defendants, and each of them, through their infringement of Mr. Werner's intellectual property rights; and

      11.      Such other relief as the Court deems just and proper.

      Respectfully submitted,

      **SPECTOR GADON & ROSEN, P.C.**

      By: s/ David B. Picker
      David B. Picker
      Bruce Bellingham
      (applicant for admission *pro hac vice*)
      1635 Market Street, 7th Floor
      Philadelphia, PA 19103
      (215) 241-8916
      bbellingham@lawsgr.com

July 1, 2015      *Attorneys for Plaintiff*